UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:13-cv-49-RJC

| | |
|---|---|
| JAMES FRANKLIN MCCLELLAND, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RANDY TEAGUE, Superintendent, )<br>Marion Correctional Center, )<br>KEITH TURNER, Unit Manager, )<br>Marion Correctional Center, )<br>J. STILES, Correctional Officer, )<br>Marion Correctional Center, )<br>FNU SURRETT, Sergeant, Marion )<br>Correctional Center, )<br>EDWARD K. OSTEEN, DHO )<br>Committee, Marion Correctional Center, )<br>)<br>Defendants. )<br>_____)| ORDER |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1), on Plaintiff's Application to Proceed Without Prepayment of Fees or Costs, (Doc. No. 2), on Plaintiff's "Motion to Correct Superintendent Defendant's Name," (Doc. No. 4), and on Plaintiff's Motion for Writ of Mandamus, (Doc. No. 7). First, with regard to Plaintiff's Application to Proceed in forma pauperis, Plaintiff's inmate trust fund account statement shows that, as of March 18, 2013, Plaintiff's balance was $0.00. (Doc. No. 8). Because Plaintiff has insufficient funds with which to pay the filing fee, Plaintiff's application to proceed in forma pauperis shall be granted for the limited purpose of this initial review.

I. **BACKGROUND**

Pro se Plaintiff James Franklin McClelland, currently incarcerated at Marion Correctional Institution, filed this action on February 19, 2013, pursuant to 42 U.S.C. § 1983. In his

Complaint, Plaintiff names as Defendants the following individuals: (1) Randy Teague, identified as "Superintendent, Marion Correctional Center"; (2) Keith Turner, identified as "Unit Manager Marion Correctional Center"; (3) J. Stiles, identified as "Correctional Officer, Marion Correctional Center"; (4) FNU Surrett, identified as "Sergeant Marion Correctional Center"; and (5) Edward K. Osteen, identified as "DHO Committee Marion Correctional Center."

Plaintiff appears to be purporting to bring his claims in the Complaint based on generalized allegations of racial discrimination at Marion Correctional Center, as well as on the allegation that he was falsely accused and found guilty in a disciplinary hearing of an infraction for covering his cell door window. For relief, Plaintiff asks this Court to "issue a full-scale investigation into all of the above complaints involving racial profiling, discrimination, etc. and a full report, to be returned to the court for evaluation for a retrial and hearing on the (DHO) Disciplinary Hearing Officer[s] decision in this matter." (Doc. No. 1 at 5).

### A. Plaintiff's Allegations of Racial Discrimination Against African-Americans in Marion Correctional Center

In his Complaint, Plaintiff, who is African-American, first alleges that Defendant Randy Teague denied Plaintiff's "equal protection" rights by allowing the officers under his supervision to engage in discrimination towards African-Americans in the prison. (Doc. No. 1 at 5). Specifically, Plaintiff alleges:

> in the year 2011-2012 I submitted [a] formal complaint to [the U.S. Marshal's Office] as well as to the Western District Court concerning and involving racial discrimination and racial profiling of African-American (black) inmates (per se) and others by besetting with annoyances, threats, demands, deliberate persecution, taunting and insulting. Randy Teague as their supervisor has not intervened to correct injustice thereby allowing the name defendants to misuse and abuse their authority of policy, practices, and customs that would include inadequate training and supervision, and a failure to adequately investigate inmates' complaints.

(Id. at 5-7). Plaintiff alleges that "African-Americans (black) are denied employment within this

facility, [for] example, no black inmates are permitted to work in any of the facilit[y's] canteen nor maintenance department." (Id. at 7). Plaintiff also alleges that, with regard to disciplinary actions in the prison, African-American inmates do not have "issues properly investigated that would determine his guilt or innocence." (Id.). Plaintiff alleges that Defendant Keith Turner has engaged in racial discrimination because he "often persecuted African-Americans [black] inmates while Caucasians [white] inmates violating the same or identical offense." (Id. at 8).

Plaintiff also alleges that Defendant Turner dismissed inmate Mark Patterson and other Caucasians [white] inmates' infractions for identical offenses just days after Plaintiff was charged with covering his cell window. (Id. at 9). Plaintiff further alleges that Defendant Turner is "aware of his staff using abusive language and intimidation directed upon inmates whom are not friends, relatives, business associates or political allies." (Id.).

### B. Plaintiff's Allegations Arising Out of Disciplinary Action Taken Against Him for Covering His Cell Door Window

On February 2, 2013, Plaintiff was given a disciplinary hearing after receiving an infraction for covering his door window with newspaper and writing paper on January 16, 2013. At the conclusion of the hearing, Plaintiff was found guilty of the offense. See (Id. at 12). Defendant Stiles was the correctional officer who charged Plaintiff with the infraction. Plaintiff alleges that he did not cover his cell door and that Defendant Stiles wrongly accused him of the infraction because Plaintiff refused to inform Stiles of criminal activities by other inmates. (Id. at 9-10). Plaintiff further alleges that on February 4, 2013, Defendant Stiles told a white inmate to remove his blind from his cell door window, but Stiles did not impose any punishment on the white inmate. (Id. at 10).

As to Defendant Surrett, who was the investigating officer for the disciplinary action

taken against Plaintiff, Plaintiff alleges that Surrett wrongly refused to review the video evidence before Plaintiff's disciplinary hearing. (Id. at 10-11). As to Defendant Osteen, the Disciplinary Hearing Officer ("DHO") for Plaintiff's disciplinary hearing, Plaintiff alleges that Osteen failed to weigh all of the evidence by refusing to allow Plaintiff to use the video footage to prove his innocence. (Id. at 11).

In his prayer for relief, Plaintiff states that he wants the Court to "issue a full scale investigation into all the above complaints involving racial profiling, discrimination, etc. and a full report to be returned to the Court for evaluation, for a retrial and hearing on (DHO) Disciplinary Hearing Officer decision." (Id. at 5).

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to

ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III.     DISCUSSION**

As to Plaintiff's allegations of racial discrimination against African-Americans in the prison, Plaintiff has failed to allege a particularized injury as to himself. Rather, he appears to be bringing his equal protection claim on behalf of other African-American inmates who were allegedly discriminated against. Plaintiff does not have standing to sue on behalf of other inmates. See Inmates v. Owens, 561 F.2d 560, 562-63 (4th Cir. 1977) (one inmate does not have standing to sue on behalf of another). Therefore, the Court dismisses for failure to state a claim under § 1915A Plaintiff's equal protection claim based on alleged discrimination against African-American inmates in the prison.

Next, as to Plaintiff's allegations regarding the disciplinary action taken against him for covering his cell window, this claim will be dismissed for two reasons. First, when Plaintiff filed this action, his disciplinary infraction did not appear to be final. That is, Plaintiff's disciplinary hearing was on February 2, 2013. At the conclusion of the hearing, Plaintiff was notified of his appeal rights. Plaintiff has not indicated whether he appealed the decision and, if so, the result of the appeal.[1] Because it is not clear whether Plaintiff has exhausted his appeal and that the

---

[1] In his verified statement, and under penalty of perjury, regarding his administrative remedies, Plaintiff has left blank the boxes in which he was supposed to check either that he has exhausted his administrative remedies or that he has not exhausted his administrative remedies. See (Doc. No. 5). Plaintiff states in the Complaint that DOC policy prohibits inmates from submitting grievances based on inmate infractions and that he, therefore, could not file a grievance. (Doc. No. 1 at 2).

disciplinary decision against him has become final, it appears that Plaintiff's due process claim is premature.

In any event, Plaintiff's due process claim is subject to dismissal on the merits. Plaintiff essentially alleges that his due process rights were violated in his hearing for the disciplinary infraction. To show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995); McNeill v. Currie, 84 F. App'x 276, 277 (4th Cir. 2003).

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court set forth the rights that must be afforded to an inmate in the context of a prison disciplinary hearing that results in the loss of good time credits. Under Wolff, the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-66; see also Superintendent Mass. Corr. Inst.,Walpole v. Hill, 472 U.S. 445, 454 (1985) (discussing Wolff).

In the Complaint, Plaintiff essentially alleges that he was denied due process because he not allowed to present all of the evidence that he wanted to present at the disciplinary infraction hearing--most importantly, a videotape of his cell on the day he was charged with the infraction. This argument is without merit. Under Wolff, an inmate must be allowed an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present

documentary evidence in his defense. Wolff, 418 U.S. at 566. The Wolff Court also held, however, that inmates do not have an unqualified right to present evidence and call witnesses because of the "obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." Wolff, 418 U.S. at 566. Under Wolff, prison officials must be given the "necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Id.

Here, the record of the disciplinary hearing indicates that the investigating officer "state[d] that the video evidence did not add or take away from the reporting-party statement." (Doc. No. 1 at 12). In a prison disciplinary proceeding, a prisoner is not entitled to the "full panoply of rights" that are present in a criminal prosecution. Wolff, 418 U.S. at 556. "Given that a DHO can rely on the statements of adverse witnesses without Petitioner's cross-examination or confrontation, it follows that a DHO officer can similarly rely on the statements of a staff member regarding his review of potentially exculpatory videotape evidence." Alexander v. Schleder, 790 F. Supp. 2d 1179, 1187 (E.D. Cal. 2011).

Here, this Court finds it was reasonable for the DHO to rely on the statement of the investigating officer who had reviewed the video surveillance footage, and the DHO was not required to have reviewed the footage himself. See Quick v. Drew, Civil Action No. 5:11cv2059-GRA-KDW, 2012 WL 3000672, at *5 (D.S.C. June 25, 2012). Furthermore, this Court will not find a due process violation as long as there was "some evidence" to support a finding of Plaintiff's guilt. Hill, 472 U.S. at 454; Accord Raynor v. Jackson, No. 3:06cv469-03-MU, 2006 WL 3359433, at *3 (W.D.N.C. Nov. 20, 2006). In sum, Plaintiff has not shown a due

process violation based on his contention that he was not allowed to present certain evidence at his disciplinary infraction hearing.

**IV.     CONCLUSION**

Plaintiff's claim regarding racial discrimination and an equal protection violation is dismissed for failure to state a claim under § 1915A.  Plaintiff's due process claim challenging his disciplinary infraction is subject to dismissal as premature and, in any event, Plaintiff has not shown a violation of his due process rights.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Application to Proceed Without Prepayment of Fees or Costs, (Doc. No. 2), is **GRANTED** for the limited purpose of this initial review of his Complaint.

2. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED**.

3. Plaintiff's "Motion to Correct Superintendent Defendant's Name," (Doc. No. 4), is **DENIED** as **MOOT**.

4. Plaintiff's Motion for Writ of Mandamus, (Doc. No. 7), is **DENIED** as **MOOT**.

Signed: May 17, 2013

Robert J. Conrad, Jr.
Chief United States District Judge